**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| THANH T. VAN, | DOCKET NUMBER |
| Appellant, | DA-1221-18-0264-W-1 |
| v. | |
| DEPARTMENT OF VETERANS AFFAIRS, | DATE: July 2, 2024 |
| Agency. | |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

David Evans, Esquire, San Antonio, Texas, for the appellant.

Patrick A. Keen, Shreveport, Louisiana, for the agency.

## BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member*

*Member Kerner did not participate in the adjudication of this appeal.

## FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which denied corrective action in her individual right of action (IRA) appeal. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact;

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed.  Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115).  After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review.  Therefore, we DENY the petition for review.  Except as expressly MODIFIED to supplement the administrative judge's analysis that the agency established by clear and convincing evidence that it would have taken the same personnel actions absent the appellant's protected activities, we AFFIRM the initial decision.

## BACKGROUND

¶2　　In November 2009, the appellant was appointed as a staff Physician in the Imaging Service of the agency's Audie L. Murphy Memorial Veterans' Hospital (Audie Murphy VA) in San Antonio, Texas.[2]  Initial Appeal File (IAF), Tab 11 at 18; Hearing Compact Disc, October 17, 2018 (HCD 2), Track 2 at 1:15 (testimony of the appellant).  The hospital's Imaging Service is divided into four sections – Diagnostic Radiology, Interventional Radiology, Nuclear Medicine, and Radiation Oncology.  *Id*. at 120.  Each section is headed by a Section Chief, and the Imaging Service as a whole is headed by a Service Chief.  HCD 2, Track 1 at 1:17:55 (testimony of Dr. L).

---

[2] The Imaging Service used to be called the "Radiology Service."  Hearing Compact Disc, October 17, 2018, Track 1 at 2:48:50 (testimony of Dr. L).  These terms are used interchangeably throughout the record.

¶3    In the fall of 2014, the agency appointed Dr. A as the new Chief of the Imaging Service. IAF, Tab 1 at 184. Shortly thereafter, Dr. A personally selected a physician to work in the Imaging Service on a contract basis, and in January 2015, the appellant raised concerns about the competency of this physician based on multiple errors that he had made reading and interpreting images. *Id.* at 184-85; Hearing Compact Disc, October 16, 2018 (HCD 1), Track 1 at 9:10 (testimony of the Radiology Administrator), Track 4 at 6:00 (testimony of Dr. D). These concerns precipitated an inquiry and a formal peer review that resulted in a delay in the subject physician securing a civil service appointment, although he was ultimately returned to the Imaging Service with limited privileges. IAF, Tab 1 at 185; HCD 2, Track 1 at 2:35:30 (testimony of Dr. L).

¶4    Shortly after Dr. A became aware of the appellant's disclosures, she and some of the upper management at the Audie Murphy VA began subjecting her to a number of personnel actions that the appellant believed to be retaliatory. IAF, Tab 1 at 185-88. The appellant's working conditions eventually led her to resign her position effective June 30, 2015, and pursue a mammography fellowship at the neighboring university hospital. IAF, Tab 11 at 16, 18; HCD 2, Track 2 at 17:10 (testimony of the appellant). Around the same time, an unrelated investigation led to Dr. A's reassignment and removal. HCD 2, Track 1 at 2:59:30 (testimony of Dr. L). Dr. L, who was Deputy Chief of Medical Staff at the time, stepped in to fill the vacant Service Chief position. HCD 2, Track 1 at 2:47:50 (testimony of Dr. L). In light of this personnel shift, which had removed Dr. A from her chain of command, the appellant immediately regretted her decision to resign, but she felt that she had to go through with it because she had already made a commitment to the university. IAF, Tab 11 at 16; HCD 2, Track 2 at 19:10 (testimony of the appellant).

¶5    Prior to her resignation, on April 28, 2015, the appellant filed a whistleblower complaint with the Office of Special Counsel (OSC). *Van v.*

*Department of Veterans Affairs*, MSPB Docket No. DA-1221-16-0244-W-1, Appeal File (0244 AF), Tab 1 at 10, Tab 3. The complaint culminated in a February 24, 2016 Board appeal, which was dismissed as settled on September 6, 2016. 0244 AF, Tabs 1, 18, 20.

¶6     Meanwhile, the witnesses broadly agreed that, when Dr. L took over for Dr. A in the summer of 2015, the Imaging Service was in disarray: Morale was low, several physicians had secured legal counsel for various reasons, a significant backlog of work had accumulated, and the service was severely understaffed, particularly at the leadership level. IAF, Tab 20 at 76-77; HCD 1, Track 2 at 3:45 (testimony of Human Resources Specialist); HCD 2, Track 1 at 44:00, 2:14:30 (testimony of Dr. L). In the wake of the appellant's departure, Dr. L began the process of rebuilding the Imaging Service, issuing several vacancy announcements, including the two at issue in this appeal. IAF, Tab 23 at 6; HCD 2, Track 1 at 44:00 (testimony of Dr. L.).

¶7     The first vacancy at issue was for Section Chief of Diagnostic Radiology. The agency announced the vacancy on September 9, 2016, open to current Imaging Service employees only. IAF, Tab 1 at 76. The appellant applied for the position, but because she was no longer a Federal employee, her name was not referred to Dr. L, the selecting official. IAF, Tab 11 at 94, 99-100; HCD 1, Track 2 at 7:55 (testimony of Human Resources Specialist). Dr. L selected Dr. W, who had begun as a staff physician in January 2016, and was the only internal candidate to apply. IAF, Tab 11 at 94, 100, 117; HCD 1, Track 2 at 36:30 (testimony of Human Resources Specialist), Track 3 at 1:18:45 (testimony of Dr. W); HCD 2, Track 1 at 2:10:50 (testimony of Dr. L).

¶8     The second vacancy was for Service Chief, announced on April 25, 2017, through the open competitive process. IAF, Tab 1 at 92. The appellant applied for this position as well, but after scoring her application, Dr. L determined that she did not meet the cutoff for an interview, and so she was not selected for that position either. IAF, Tab 32 at 25; HCD 1, Track 3 at 26:00 (testimony of

Supervisory Staff Specialist); HCD 2, Track 1 at 1:53:30 (testimony of Dr. L). The agency extended offers to multiple applicants who ultimately declined, before it settled on the same Dr. W, whom it had promoted to Section Chief just 9 months before. HCD 1, Track 3 at 22:00 (testimony of Supervisory Staff Specialist), 1:14:20 (testimony of Dr. W); HCD 2, Track 1 at 2:51:30, 2:21:30, 3:14:40 (testimony of Dr. L).

¶9　　The appellant filed another whistleblower complaint with OSC, claiming that her nonselections were the product of whistleblower retaliation. IAF, Tab 1 at 164-77. OSC closed its file without taking corrective action, and the appellant filed the instant IRA appeal. *Id*. at 5, 203-04.

¶10　　After a hearing, the administrative judge issued an initial decision denying the appellant's request for corrective action on the merits. IAF, Tab 47, Initial Decision (ID). She found that the appellant engaged in protected activity that was a contributing factor in the nonselections, but that the agency proved by clear and convincing evidence that it would have made the same hiring decisions even absent the appellant's protected activity. ID at 7-18.

¶11　　The appellant has filed a petition for review, disputing the administrative judge's analysis of the agency's affirmative defense. Petition for Review (PFR) File, Tab 1. The agency has filed a response to the petition for review, and the appellant has filed a reply to the agency's response. PFR File, Tabs 3-4.

## ANALYSIS

¶12　　In the merits phase of an IRA appeal, the appellant has the burden of proving by preponderant evidence that she engaged in protected activity described under 5 U.S.C. § 2302(b)(8) or (b)(9)(A)(i), (B), (C), or (D), and that this activity was a contributing factor in a personnel action as described under 5 U.S.C. § 2302(a)(2)(A). *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016). If the appellant meets her burden, the Board will order corrective action unless the agency proves by clear and convincing evidence that it would have

taken the same personnel action in the absence of the protected activity. 5 U.S.C. § 1221(e); *Salerno*, 123 M.S.P.R. 230, ¶ 5. In determining whether an agency has met its burden, the Board will consider all of the relevant factors, including the following: (1) The strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999); *Parikh v. Department of Veterans Affairs*, 116 M.S.P.R. 197, ¶ 36 (2011).

¶13    In this case, the administrative judge found that the appellant proved her case in chief. ID at 7-9. The appellant alleged retaliation for multiple protected disclosures and activities, including her disclosures regarding the competency of her physician coworker, a complaint to the agency's Office of Inspector General, her first OSC complaint, and her prior Board appeal. ID at 5. The administrative judge found that all of these matters were protected under the Whistleblower Protection Act, as amended. ID at 7. However, she also found that the appellant only proved contributing factor with respect to her disclosures concerning physician competency, and that the only relevant official who knew about these disclosures was Dr. L. ID at 8-9. Neither party disputes these findings, and they appear to be supported by the record.

¶14    In assessing the agency's affirmative defense, the administrative judge applied the *Carr* factors, finding that Dr. L had some motive to retaliate, although such motive was not particularly strong, the agency presented strong evidence in support of its hiring actions, and the treatment of similarly situated non-whistleblowers was not a significant factor. ID at 9-18. Weighing these factors together, the administrative judge found that the agency proved by clear and convincing evidence that it would not have selected the appellant for either of the positions at issue, even absent her protected activity. ID at 18.

¶15     Regarding the strength of the agency's evidence in support of its actions, the administrative judge considered the agency's explanation for each of its hiring decisions separately. As stated above, the appellant was not selected for the Section Chief position because she was not within the area of consideration for the vacancy announcement, i.e., current employees within the Audie Murphy VA's Imaging Service. IAF, Tab 1 at 76. Thus, the issue is essentially whether the agency intentionally used the internal hiring process to exclude the appellant from applying. The administrative judge credited the agency's explanation that the Audie Murphy VA often uses internal hiring, and the internal hiring process in this case allowed the agency to avoid creating a new full-time equivalency (FTE) in the Imaging Service. ID at 14-15. She also credited Dr. L's explanation that the internal hiring process was meant to create advancement opportunities for current employees of the troubled Imaging Service, and she noted that Dr. L made the decision to hire internally shortly after the appellant resigned and well before she notified him in June 2016 that she wished to be considered for available positions. ID at 14; IAF, Tab 1 at 97-98.

¶16     As stated above, the appellant was not selected for the Service Chief position because her application score did not meet the cutoff for an interview. The cutoff score was 20, but Dr. L scored the appellant's application at 13. IAF, Tab 32 at 25. The main point of contention here is whether the appellant should have gotten credit for "Assignment as a Radiology Service or Section Chief," in light of work that she did in the Nuclear Medicine Section, wherein she "basically ran" the section for 18 months and filled in at other times while the Section Chief was occupied with other matters. *See* HCD 2, Track 2 at 6:30 (testimony of the appellant). Had she been given credit for this work as "Assignment as a Radiology . . . Section Chief," her application score would have made the cutoff for an interview. IAF, Tab 32 at 25. However, the administrative judge found that the appellant's application package did not reflect that she ever had any leave-approving, disciplinary, hiring, or firing authority, or that she ever

negotiated with the union or dealt with bargaining unit employees, and she credited Dr. L's testimony that acting as Service Chief periodically while someone is out of the office is not the same as being officially designated as Acting Service Chief, with official responsibility and authority to make management decisions. ID at 17.

¶17 Regarding Dr. L's motive to retaliate, the administrative judge considered the declaration of the former Radiology Administrator, who stated that Dr. L had told him specifically that he did not want the appellant to come back because of the turmoil that her whistleblowing activity had caused. ID at 10-11; IAF, Tab 1 at 58-62. The Radiology Administrator testified at the hearing consistent with his declaration, and applying the factors set forth in *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987), including her observation of the witness's demeanor, the administrative judge found his testimony to be credible. ID at 10-11; HCD 1, Track 1 at 12:30, 43:40 (testimony of the Radiology Administrator). The administrative judge also considered Dr. L's own deposition testimony, in which he explained that bringing the appellant back would have been difficult because it would have exacerbated interpersonal issues already present in the troubled Imaging Service, which he was then trying to rebuild. ID at 11-13. The administrative judge further considered that neither Dr. L nor anyone in his direct supervisory chain at the time was the subject of the whistleblowing, but as a high-ranking management official with general oversight responsibilities, he may have been indirectly implicated. ID at 13-14. Furthermore, as Deputy Chief of Staff, Dr. L worked closely with the Chief of Staff, who did oversee the Imaging Service directly. *Id*. The administrative judge also noted that Dr. L and the appellant were on good terms when she departed, with no hint of personal animus either way. ID at 14. The administrative judge concluded that Dr. L had some retaliatory motive, but that this motive was not particularly strong. ID at 14.

¶18     Regarding the agency's treatment of similarly situated non-whistleblowers, the administrative judge found that there was no pertinent evidence concerning this *Carr* factor, and that it did not figure significantly into the analysis.  ID at 18.

¶19     The appellant disputes these findings on review, arguing that the administrative judge got several facts wrong, failed to consider other facts, and weighed the evidence incorrectly.  PFR File, Tab 1 at 7.  At the outset, we note that the administrative judge's failure to mention all of the evidence in this extensive record does not mean that she did not consider it in reaching her decision.  *See Marques v. Department of Health and Human Services*, 22 M.S.P.R. 129, 132 (1984), *aff'd*, 776 F.2d 1062 (Fed. Cir. 1985) (Table).  Nevertheless, the U.S. Court of Appeals for the Federal Circuit has held that evidence only clearly and convincingly supports a conclusion when it does so in the aggregate considering all the pertinent evidence in the record, and despite the evidence that fairly detracts from that conclusion, and that it is error for the Board to not evaluate all the pertinent evidence in determining whether an element of a claim or defense has been adequately proven.  *Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012).  Mindful of these principles, we have closely reviewed the record in this appeal and carefully considered each of the appellant's contentions on review.  Accordingly, we supplement the initial decision as set forth below.

¶20     Regarding the first *Carr* factor, the appellant argues that the benefits of internal hiring all applied to her because, even though she was not a current employee when the Section Chief vacancy was announced, she had only recently departed.  PFR File, Tab 1 at 13-14.  This, however, is not unqualifiedly true; because the appellant had separated from service, she would have had to go through the pre-employment process just like any other external candidate, and, depending on applicable expiration dates, she may have had to undergo recredentialing, a new background check, a new physical, or other

pre-employment requirements. HCD 1, Track 2 at 1:21:40 (testimony of the Human Resources Specialist). The appellant also disputes the administrative judge's finding that the internal hiring process allowed the Section Chief appointment to be FTE-neutral. PFR File, Tab 1 at 10; ID at 4, 14-15. She argues that Dr. W's staff Physician position was, in fact, backfilled after he was promoted to Section Chief. PFR File, Tab 1 at 10; IAF, Tab 20 at 91-92. We disagree. The Diagnostic Radiology Section Chief was FTE-neutral because it was created by converting an existing staff Physician position into a Section Chief position. IAF, Tab 32 at 23; HCD 1, Track 3 (testimony of Dr. W); HCD 2, Track 1 at 38:25 (testimony of Dr. L). The fact that the agency subsequently filled another of its vacant FTEs in that section is immaterial because the total number of FTEs remained the same. In any event, we find that it is simply too much to expect that the agency should have changed the entire focus of the hiring process in order to reach a single potential candidate who had not contacted the agency since her departure more than a year prior and who had never before expressed any interest in taking a management position.[3] HCD 2 at 1:14:15, 2:07:20, 3:11:10 (testimony of Dr. L). We find it highly unlikely that Dr. L would have made the decision to recruit internally in order to exclude a candidate whom he had little or no reason to believe would be applying. Along these lines, the appellant argues that her June 12, 2015 email put Dr. L on notice that she was interested in returning to the agency before he made his decision to recruit for the Section Chief position internally. PFR File, Tab 1 at 7-8, 14; IAF, Tab 11 at 16. Again, we disagree. In this email, the appellant expressed a desire to keep her clinical privileges at the Audie Murphy VA and a willingness to help out on an ad

[3] On June 14, 2016, the appellant wrote Dr. L a letter asking to be considered for any radiology vacancies for which she might be qualified. PFR File, Tab 1 at 8; IAF, Tab 1 at 97-98. However, she wrote this letter after her nonselection for the Section Chief position and, although she was not selected for the Service Chief position, her application for it was considered. To the extent that the appellant is arguing that Dr. L should have noncompetitively appointed her to a staff Physician or other unspecified position, PFR File, Tab 1 at 8-9, this is beyond the scope of the instant appeal, which involves only the Section and Service Chief positions.

hoc basis.[4]  IAF, Tab 11 at 16.  We do not read this email as indicating a desire to return to Federal employment, much less employment as a Section Chief.  For the reasons explained in the initial decision, we agree with the administrative judge that the agency presented compelling evidence in support of Dr. L's decision to recruit internally for Section Chief of Diagnostic Radiology, and we see little reason to doubt the veracity of the agency's explanation.  ID at 14-15.

¶21    Regarding the Service Chief position, the appellant argues that Dr. L should have credited her as having been assigned to a radiology Section Chief position because her application package outlined her extensive supervisory experience as well as her experience acting as Nuclear Medicine Section Chief in Dr. D's absence.  PFR File, Tab 1 at 11, 14-15; IAF, Tab 1 at 102-10, Tab 24 at 7.  It is undisputed that, had the appellant received such credit, her application score would have entitled her to an interview, and the record shows that the appellant had experience supervising staff and residents.  IAF, Tab 32 at 25; HCD 2, Track 2 at 6:15 (testimony of the appellant).  Although all physicians at the Audie Murphy VA supervise staff and residents, the appellant's experience in this regard seems to have been more extensive than most.  HCD 2, Track 1 at 1:30:16 (testimony of Dr. L); HCD 2, Track 2 at 6:15, 14:20 (testimony of the appellant).  This difference, however, appears to be largely a matter of degree; the appellant's supervisory experience did not entail disciplinary authority, hiring and firing, leave approval, addressing grievances, or business planning, which was the type of experience that Dr. L was looking for and that the appellant would have received had she been officially detailed to Section Chief.  HCD 2, Track 1 at 1:29:55 (testimony of Dr. L), Track 2 at 22:00 (testimony of the appellant); *see generally* 5 U.S.C. § 7103(a)(10) (defining "supervisor" for purposes of Federal labor-management and employee relations).  For the reasons explained in the

---

[4] Dr. L testified that it would not actually have been possible for the appellant to retain her clinical privileges at the Audie Murphy VA after her resignation because her change in employment status would have required recredentialing.  HCD 2 at 1:11:10 (testimony of Dr. L).

initial decision, we agree with the administrative judge that the agency presented strong evidence to support its scoring of the appellant's application for the Service Chief position. ID at 15-17.

¶22  Regarding the first *Carr* factor in general, the appellant argues that she was a good employee during her tenure with the agency and that there was nothing about her that should have prevented her from being rehired. PFR File, Tab 1 at 7-8. We agree. The record is clear concerning the appellant's colleagues' high regard for her; not a single witness had anything negative to say about the appellant, but to the contrary testified favorably about her and her supervisory and clinical skills. HCD 1, Track 1 at 10:50 (testimony of Radiology Administrator), Track 2 at 1:45 (testimony of Human Resources Specialist), Track 3 at 51:30 (testimony of Dr. W), Track 4 at 2:00 (testimony of Dr. D), 52:05 (testimony of Dr. F); HCD 2, Track 1 at 3:39:50 (testimony of Dr. L). However, we find that this is largely immaterial because the appellant's competence and good reputation did not put her within the area of consideration for the Section Chief vacancy, and did not constitute the experience required for an appointment to Service Chief.

¶23  Regarding the second *Carr* factor, the appellant argues that the administrative judge failed to assess accurately the strength of Dr. L's bias or to figure it into her overall analysis. PFR File, Tab 1 at 15, 17-18. First, she argues that Dr. L admitted in his deposition that he was biased against her and for that reason had recused himself from a previous selection process for a staff Physician position. *Id.* at 6-7, 10, 12, 15-17. We disagree with the appellant's characterization of Dr. L's deposition testimony. Dr. L testified that he had the *potential* to be biased, and not that he was actually biased against the appellant. IAF, Tab 20 at 91-92. He later clarified at the hearing that he was referring to the appearance of bias, and for that reason, he followed the advice of a human resources official to remove himself from the decision process. HCD 2, Track 1 at 1:48:55, 3:05:15 (testimony of Dr. L).

¶24 In this same vein, the appellant argues that Dr. L testified that the appellant's return to the Imaging Service would cause turmoil and that this would have created an additional problem that he would have to deal with in getting the Service back into shape. PFR File, Tab 1 at 8, 15-16; IAF, Tab 20 at 77-78, Tab 22 at 47-48; HCD 2, Track 1 at 3:24:10 (testimony of Dr. L). The appellant's characterization of Dr. L's testimony in this regard is accurate.[5] We find, however, that Dr. L's candid admission of his concerns regarding such potential turmoil must be viewed in the context of his demonstrated knowledge that management is responsible for setting such considerations aside and addressing any resulting disharmony in a fair and evenhanded manner. HCD 2, Track 1 at 3:27:50 (testimony of Dr. L).

¶25 Regarding the administrative judge's finding that the appellant was on good terms with Dr. L when she resigned, the appellant argues that this was only because she was unaware that Dr. L was harboring retaliatory animus against her. PFR File, Tab 1 at 18; ID at 14. The appellant's point is well-taken. We find that the absence of any overt hostility from Dr. L prior to the appellant's resignation is a relevant fact to consider, but it does little to show that Dr. L was not actually harboring animus.

¶26 The appellant also argues that the administrative judge failed to properly account for the deposition and hearing testimony of the Radiology Administrator, who stated that he was involved in meetings in which Dr. L expressed his retaliatory animus towards the appellant. PFR File, Tab 1 at 16, 18; IAF Tab 1 at 58-62; HCD 1, Track 1 at 12:30, 17:10 (testimony of Radiology Administrator). We agree with the appellant that this evidence weighs in favor of finding a strong retaliatory motive, particularly in light of the administrative judge's favorable demeanor-based credibility determinations. ID at 10-11. However, we cannot discount the fact that the administrative judge had the

---

[5] We disagree with this characterization to the extent that the appellant intimates that Dr. L admitted he was actually biased against her for that reason. PFR File, Tab 1 at 15-16.

opportunity to observe Dr. L's demeanor as well, and that the countervailing evidence tempered her assessment of the strength of his retaliatory motive. ID at 13-14. Having reviewed the initial decision and considered the pertinent evidence of record, particularly Dr. L's realistic assessment of the consequences of the appellant's whistleblowing and his clear understanding of his responsibilities in that regard, we find that the appellant has not provided a sufficiently sound basis for us to disturb the initial decision with respect to the second *Carr* factor. *See Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002).

¶27    Regarding the third *Carr* factor, the appellant argues that the agency bears the burden of coming forward with evidence regarding similarly situated non-whistleblowers, and that the agency bears the risk associated with having no evidence on record for this factor. PFR File, Tab 1 at 19-20; *see Miller v. Department of Justice*, 842 F.3d 1252, 1262 (Fed. Cir. 2016). We agree with the appellant on this point. However, given the idiosyncratic nature of hiring decisions, it is doubtful that any comparison cases, even assuming they existed, would be able to shed much light on the instant appeal.

¶28    The appellant argues that the Radiology Administrator himself serves as a comparison employee because Dr. L assigned him a very high performance rating prior to his departure for another facility but began to question his competence after he submitted a declaration in support of the appellant. PFR File, Tab 1 at 20; IAF, Tab 28; HCD 2, Track 1 at 2:20 (testimony of Dr. L). We find, however, that Dr. L gave a reasonable explanation for this apparent discrepancy; he testified that the problems with the Radiology Administrator's work did not come fully to light until after his departure, and in any event, he gave all of his subordinates in the Imaging Department very high performance ratings for the 2015 performance year in light of the difficult situation that they all were facing. HCD 2, Track 1 at 4:40, 2:43:50 (testimony of Dr. L). Therefore, after having considered the appellant's arguments on review, we agree with the administrative

judge that the third *Carr* factor is not significant under the facts of the instant appeal.

¶29    Having found firm support for the administrative judge's assessment of each individual factor, we also agree with her conclusion that, weighing the evidence as a whole, the agency has met its burden to prove by clear and convincing evidence that it would have made the same hiring decisions notwithstanding the appellant's protected disclosures. ID at 18.

## NOTICE OF APPEAL RIGHTS[6]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

---

[6] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

**(1) <u>Judicial review in general</u>**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) <u>Judicial or EEOC review of cases involving a claim of discrimination</u>**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you</u>

receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3)** **Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[7]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

---

[7] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:

_____
Gina K. Grippando
Clerk of the Board

Washington, D.C.